FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2018 APR 30 PM 3:56
STEPHAN HARRIS, CLERK
CASPER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STATE OF WYOMING and STATE OF MONTANA, <br><br> Petitioners, <br><br> STATE OF NORTH DAKOTA and STATE OF TEXAS, <br><br> Intervenor-Petitioners, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR; SALLY JEWELL, in her official capacity as Secretary of the Interior; UNITED STATES BUREAU OF LAND MANAGEMENT; and NEIL KORNZE, in his official capacity as Director of the Bureau of Land Management, <br><br> Respondents, <br><br> WYOMING OUTDOOR COUNCIL, et al.; EARTHWORKS; STATE OF CALIFORNIA and STATE OF NEW MEXICO, <br><br> Intervenor-Respondents. | Case No. 2:16-CV-0285-SWS <br> **(Lead Case)** |
| WESTERN ENERGY ALLIANCE, and the INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, <br><br> Petitioners, <br><br> vs. <br><br> SALLY JEWELL, in her official capacity as Secretary of the United States Department of the Interior; and BUREAU OF LAND MANAGEMENT, <br><br> Respondents. | Case No. 2:16-CV-0280-SWS |

**ORDER DENYING MOTION FOR STAY PENDING APPEAL**

This matter is before the Court on *Respondent-Intervenor Citizen Groups and States' Joint Motion for a Stay Pending Appeal* (ECF No. 222). The Court, having considered the briefs in support of the motion and responses in opposition thereto, and being otherwise fully advised, FINDS that a stay pending appeal is not warranted.

1. On April 4, 2018, considering the particular and unusual circumstances presented by these consolidated cases, this Court exercised its equitable discretion to stay implementation of the "phase-in provisions" of BLM's Waste Prevention Rule and further stay these cases "in order to preserve the status quo, and in consideration of judicial economy and prudential ripeness and mootness concerns." *Order Staying Implementation of Rule Provisions and Staying Action Pending Finalization of Revision Rule ("Order")* at 10 (ECF No. 215). The stay is effective pending either finalization or withdrawal of BLM's proposed Revision Rule. *Id.* at 11.

2. Intervenor-Respondents seek a stay of this Court's order pending their appeal, arguing the Court erred in relying on 5 U.S.C. § 705 to stay implementation of the phase-in provisions without assessing the four factors which must be shown for preliminary injunctive relief. The Court disagrees. While recognizing courts often utilize the four-factor preliminary injunction test in determining whether to grant relief under § 705, particularly where the stay would operate "in all material respects" as a preliminary injunction, *see Sierra Club et al. v. Fed. Hwy. Admin.*, No. 1:17-CV-01661-WJM-MEH, Slip Op. at 3 (D. Colo. April 3, 2018), this Court noted "nothing in the language of the statute itself, or its legislative history, suggests it is limited to those situations where preliminary injunctive relief would be available." *Order* at 9 n.10. Rather, § 705 authorizes a reviewing court to "issue *all necessary and appropriate process . . .* to *preserve status or rights* pending conclusion of the review proceedings." (Emphasis added.) A stay of the phase-in provisions is necessary to preserve the status quo and to prevent irreparable

2

injury pending these review proceedings, in which prudential ripeness and mootness concerns have arisen due to the BLM's exercise of its inherent authority to reconsider its own rule. Applying the preliminary injunction factors, particularly the likelihood of success prong, to the existing Waste Prevention Rule is problematic – the Court would be forced to assess the legal merits of a Rule presently being revised because of concerns about its validity expressed by the very agency that drafted the Rule.

3. Intervenor-Respondents cite to *Sampson v. Murray*, 415 U.S. 61 (1974), which noted the legislative history of § 705 indicates it was "primarily intended to reflect existing law under the Scripps-Howard doctrine . . . and not to fashion new rules of intervention for District Courts." *Id.* at 68 n.15 (citing S. Rep. No. 752, 79th Cong., 1st Sess., 27, 44 (1945)). *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4 (1942), involved the "traditional authority of reviewing courts to grant stays." *Sampson*, 415 U.S. at 76. On this point, the Supreme Court stated:

> Generally speaking, judicial review of administrative orders is limited to determining whether errors of law have been committed. *Rochester Telephone Corp. v. United States*, 307 U.S. 125, 139, 140, 59 S.Ct. 754, 761, 762, 83 L.Ed. 1147. Because of historical differences in the relationship between administrative bodies and reviewing courts and that between lower and upper courts, a court of review exhausts its power when it lays bare a misconception of law and compels correction. *Federal Communications Commission v. Pottsville Broadcasting Co.*, 309 U.S. 134, 144, 145, 60 S.Ct. 437, 442, 84 L.Ed. 656. If the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such **judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made.** The existence of power in a reviewing court to stay the enforcement of an administrative order does not mean, of course, that its exercise should be without regard to the division of function which the legislature has made between the administrative body and the court of review. 'A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. *In re Haberman Manufacturing Co.*, 147 U.S. 525, 13 S.Ct. 527, 37 L.Ed. 266. It is an **exercise of judicial discretion**. The propriety of its issue is **dependent upon the circumstances of the particular case.**' *Virginian Ry. v. United States*, 272 U.S. 658, 672, 673, 47 S.Ct. 222, 227, 228, 71 L.Ed. 463; *see Merchants' Warehouse Co. v. United States*, 283 U.S. 501, 513, 514, 51 S.Ct. 505, 509, 510, 75 L.Ed. 1227.

3

316 U.S. at 10-11 (emphasis added). The *Scripps-Howard* Court did not address the criteria which should govern the exercise of that discretion. *Id.* at 17.

4. While the Senate Report cited in *Sampson, supra*, indicates § 705 was intended to reflect "existing law," two of the bills considered also suggest Congress intended the provision to authorize preliminary injunctive relief among an array of actions. *See* Administrative Procedure, Hearings on H.R. 184, H.R. 339, H.R. 1117, H.R. 1203, H.R. 1206, and H.R. 2602, Before the House Judiciary Committee, 79th Cong., 1st Sess., 146, 179 (1945). Those bills authorized reviewing courts to "issue all necessary and appropriate writs, restraining or stay orders, or preliminary or temporary injunctions, mandatory or otherwise, required in the judgment of such court to preserve the status or rights of the parties pending full review . . . ." *Id.* These early bills thus sought to arm the courts with every available method to prevent irreparable injury pending review. The final bill broadly conveyed this intention in the words "all necessary and appropriate process." The House Report on the Administrative Procedure Act explained § 705 as follows:

> This section permits either agencies or courts, if the proper showing is made, to **maintain the status quo**. The section is in effect a statutory extension of rights pending judicial review, although the reviewing court must order the extension; or, to put the situation another way, statutes authorizing agency action are to be construed to extend rights pending judicial review and the exclusiveness of the administrative remedy is diminished so far as this section operates. While the section would not permit a court to grant an initial license, **it provides intermediate judicial relief for every other situation in order to make judicial review effective**. The authority granted is equitable and should be used by both agencies and courts to prevent irreparable injury or afford parties an adequate judicial remedy.

H.R. Rep. No. 1980, 79th Cong., 2d Sess., 277 (1946) (emphasis added).

5. Statutory construction starts "with the assumption that legislative purpose is reflected by the ordinary meaning of the language used in the statute," and the "literal language

4

of a statute controls" its interpretation "absent ambiguity or irrational result." *Edwards v. Valdez*, 789 F.2d 1477, 1481-82 (10th Cir. 1986). Courts also "presume [] Congress did not intend to enact a literally meaningless statute." *United States v. Chi Tong Kuok*, 671 F.3d 931, 940 (9th Cir. 2012). The plain language of § 705 confers broad discretionary authority upon a reviewing court to preserve the status quo where irreparable injury would otherwise result. To accept Intervenor-Respondents' argument that § 705 relief is only available in those situations where preliminary injunctive relief is appropriate would render § 705 meaningless. And while resort to legislative history is "both unnecessary and improper" where the meaning of the statute is clear, *Edwards*, 789 F.2d at 1481, this Court's interpretation is entirely consistent with Congress' intent to make judicial review effective. *See discussion, supra.*

6. The circumstances of these cases warrant a stay pursuant to § 705. The Court's order does not stay implementation of the Waste Prevention Rule in its entirety; rather, the stay is limited and applies only to the phase-in provisions which, in reality, never became effective given the BLM's intention and ongoing efforts to revise the Rule, substantially changing or eliminating those particular provisions. Accordingly, the Court's stay is narrowly tailored to prevent irreparable injury and preserve the status quo while the BLM completes the revision process. This is the only way to avoid rendering judicial review of Petitioners' challenges an "idle ceremony." *See Scripps-Howard*, 316 U.S. at 10.

7. Intervenor-Respondents further complain that by failing to assess the four preliminary injunction factors, the Court ignored the irreparable injury to their citizens and members "from enjoining the Rule." (Mot. for Stay Pending Appeal at 2.) To the extent this Court would be required to balance the harms, by applying the four-factor preliminary injunction test or otherwise, the generalized harm alleged by Intervenor-Respondents does not outweigh the

concrete irreparable harm to Industry Petitioners absent a stay of the phase-in provisions. Intervenor-Respondents assert irreparable injury in the form of "waste of 16.3 billion cubic feet" of natural gas, "over 140,000 tons of methane emissions," and "significant emissions of other dangerous air pollutants." *Id.* Notably, these numbers are derived from BLM's 2016 Regulatory Impact Analysis ("RIA") for the Waste Prevention Rule, which is currently under reconsideration as part of the revision rulemaking process due to BLM's concerns about the reliability of the RIA's findings. *See* 83 Fed. Reg. 7924, 7928 (Feb. 22, 2018). Furthermore, these numbers represent annual estimates that do not account for the time-limited nature of this Court's stay – finalization of the Revision Rule is anticipated to occur in August 2018, approximately four months from now.

8. And finally, Intervenor-Respondents overstate their alleged harm as connected to the phase-in provisions specifically, which are the <u>only</u> provisions of the Waste Prevention Rule stayed by this Court's order. In contrast, the BLM estimates that the stay imposed by the Court's order will result in additional methane emissions of less than 0.36 percent of total U.S. methane emissions in 2015. (Tichenor Decl. ¶ 7, ECF No. 227-1). The bulk of additional emissions asserted by Intervenor-Respondents – particularly volatile organic compounds (VOCs) and hazardous air pollutants (HAPs) – would result from staying implementation of the "liquids unloading" requirement, 43 C.F.R. 3179.204 (*see* Hull Decl. ¶ 7, Table 1, ECF No. 209-2); however, the Court's order does not include a stay of that provision (*see* Tichenor Decl. ¶ 7). Moreover, the prohibition on venting at 43 C.F.R. 3179.6 remains in effect, which is "almost entirely" responsible for the reduction in VOCs and HAPs under the Waste Prevention Rule. *See* Environmental Assessment, Waste Prevention, Production Subject to Royalties, and Resource Conservation Delay Final Rule, DOI-BLM-WO-WO30000-2018-0001-EA at 17 (Dec. 1, 2017),

6

available at https://www.regulations.gov/document?D=BLM-2017-0002-17370. Because the phase-in provisions have never been implemented, Intervenor-Respondents are no more harmed by the Court's stay than they have been under the status quo for the last several decades.

9. A stay pending appeal is an exercise of judicial discretion, dependent upon the circumstances of the particular case. *Nken v. Holder*, 556 U.S. 418, 433 (2009). The determination of whether to grant a stay is guided by consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. at 434.

10. Intervenor-Respondents have not met their burden of showing the circumstances here warrant a stay pending their appeal of this Court's order staying these cases and the phase-in provisions of the Waste Prevention Rule. First, as discussed above, Intervenor-Respondents have not made a "strong" showing they are likely to succeed on the merits – even if the appellate court determines this Court's stay order is an appealable order, which is fairly debatable. The Court cannot meaningfully assess the merits of a "moving target." *See Order Granting Joint Motion to Stay*, ECF No. 189 at 4 (citing *Wyoming v. Zinke*, 871 F.3d 1133, 1142 (10th Cir. 2017)). Further, again as discussed above, the balance of harms weighs in favor of this Court's stay order. And finally, this Court previously found the public interest would best be served by a stay of the Waste Prevention Rule's phase-in provisions, which "will provide certainty and stability for the regulated community and the general public," "allow the BLM to focus its limited resources on completing the revision rulemaking," and avoid the "waste, inefficiency,

and futility associated with a ping-ponging regulatory regime." *Order* at 10-11. THEREFORE, it is hereby

ORDERED that the *Respondent-Intervenor Citizen Groups and States' Joint Motion for a Stay Pending Appeal* (ECF No. 222) is DENIED.

DATED this 30th day of April, 2018.

SCOTT W. SKAVDAHL
UNITED STATES DISTRICT JUDGE